(108 So. 410)

No.. 27665.

## STATE v. MACKLES et al.

(March 29, 1926. Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Coroners ☞5—Justice of peace in ward where homicide occurred had jurisdiction to hold inquest, where coroner had resigned (Const. 1921, art. 7, § 48; Rev. St. § 2056).**

Justice of the peace in ward where homicide occurred had jurisdiction, in view of Const. 1921, art. 7, § 48, to hold the inquest, where legally elected and qualified coroner had resigned and refused to perform his duties; and hence admission in evidence of procès verbal of coroner's jury to show cause of death was correct, in view of Rev. St. § 2056.

2. **Criminal law ☞447—Where procès verbal of justice of peace did not show that persons composing coroner's jury were sworn, omission might be supplied by oral proof.**

Where procès verbal of justice of peace, acting as coroner, did not show on its face that persons who composed coroner's jury were sworn, omission might be supplied by oral proof when procès verbal was offered in evidence.

3. **Coroners ☞15—That oath administered by justice of the peace to persons who composed coroner's jury did not strictly comply with statute held immaterial (Rev. St. § 659).**

That oath administered by justice of the peace to persons who composed coroner's jury

did not strictly comply with Rev. St. § 659, *held* immaterial, where jurors were sworn to tell the truth as to cause of death, and coroner testified that deceased came to his death from cause stated in procès verbal.

4. **Criminal law ☞447.**

In murder prosecution, cause of death may be established by oral proof.

5. **Criminal law ☞424(5)—Declaration of defendant that codefendant had shot deceased held admissible as res gestæ, where practically contemporaneous with criminal act.**

Declaration of defendant that his codefendant had shot deceased *held* admissible as res gestæ, where there was no time for deliberation or concoction of any statement at variance with the truth.

6. **Criminal law ☞363.**

Acts and utterances of participants in crime, made under circumstances which preclude idea of design, are res gestæ.

7. **Witnesses ☞379(2)—State properly permitted to impeach testimony of defense witness denying knowledge of gun by proof of his statement to deputy sheriff that his father had the gun.**

Where defense witness had denied knowledge of shotgun with which homicide was apparently committed, state was properly permitted to impeach his testimony by proof that he had stated to deputy sheriff that his father, a defendant, had borrowed such gun and still had it.

O'Niell, C. J., dissenting in part.

Appeal from Twenty-Fifth Judicial District Court, Parish of Plaquemines; J. Claude Meraux, Judge.

Manuel Mackles, Sr., and others, were convicted of manslaughter, and they appeal. Affirmed.

N. H. Nunez, of St. Bernard, and James J. Landry, of New Orleans, for appellants.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., Leander H. Perez, Dist. Atty., of New Orleans (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

BRUNOT, J. The accused were charged with murder. They were tried and convicted of manslaughter. From the verdict and sen-

tence they appealed. There are five bills of exception in the record.

### Bill No. 1.

[1] This bill was reserved to a ruling of the court permitting the district attorney to introduce in evidence the procès verbal of the coroner's jury to show the cause of death. A justice of the peace acted as coroner, and defendants contend that in so acting he exceeded the jurisdiction vested in justices of the peace by the Constitution. The pertinent part of section 48, art. 7, of the Constitution of 1921, is as follows:

"They shall have criminal jurisdiction, as committing magistrates only, and shall have power to bail or discharge, in cases not capital or necessarily punishable at hard labor, and may require bonds to keep the peace."

The Constitutions of 1898 and 1913, in addition to the foregoing powers and jurisdiction, authorized the General Assembly, by general or special laws, to invest justices of the peace with criminal jurisdiction over misdemeanors, to be tried by a jury of not more than five nor less than three persons, as might be provided by law. The Constitution of 1921 simply abrogates the power of the Legislature to invest justices of the peace with jurisdiction to try misdemeanors, but in all other respects the existing and two last preceding Constitutions are identical in so far as the criminal jurisdiction of justices of the peace is concerned. Since 1855 justices of the peace in country parishes have been empowered to perform the duties of the coroner in case there is no coroner or in the event of his absence or inability to act. In Plaquemines parish a coroner was regularly elected and qualified, but he thereafter resigned and refused to perform the duties of coroner. This was the situation when the homicide charged in this case was committed, and the justice of the peace in the ward where the homicide occurred properly held the inquest. The ruling was therefore correct. R. S. § 2056.

### Bill No. 2.

[2] This bill was reserved to the admission in evidence of the procès verbal of the justice of the peace, acting as coroner, because the procès verbal does not show on its face that the persons composing the coroner's jury were sworn. The oral testimony is that they were sworn. The omission of that declaration from the procès verbal may be supplied by oral proof.

### Bill No. 3.

[3] This bill was reserved to the form of oath administered to the persons composing the coroner's jury. The justice swore them to tell the truth and nothing but the truth. This is the oath that witnesses in a cause are usually required to take. Section 659 of the Revised Statutes prescribes a formal oath for members of a coroner's jury, but it is doubtful if the average justice of the peace is aware of the existence of such a statute. We do not think a strict compliance with the statute is sacramental, because the duty of a coroner's jury is to ascertain the cause of death only, and the jurors were sworn to tell the truth as to the cause of death. Moreover, in this case, the coroner was sworn as a witness, and he testified that the deceased came to his death from the cause stated in the procès verbal, viz., "Gunshot wound in the face, broken skull around eye and nose, and deep cut from ear to ear."

[4] The cause of death may be established, as any other fact, by oral proof.

### Bill No. 4.

[5, 6] This bill was reserved to the ruling of the court admitting a statement of Joe Monroe, Sr., as a part of the res gestæ. The witness was about two acres from the scene of the homicide. He heard the altercation, and he heard the shot fired. Immediately thereafter Joe Monroe, Sr., and Clement Mackles ran near his boat, and Joe Monroe, Sr., in a scared and excited manner, said that "Manuel Mackles, Sr., had shot the nig-

ger." There was no time for deliberation or concoction of any statement at variance with the truth. These were acts and words so closely connected with the main fact as to constitute a part of it. They were events speaking for themselves through the instinctive words of a participant. They were practically contemporaneous with the criminal act, and simply illustrated its character. It is the rule that acts and utterances of participants in a crime, made under circumstances which preclude the idea of design, are res gestæ. State v. Molisse, 38 La. Ann. 381, 58 Am. Rep. 181; Cyc. vol. 34, p. 164 et seq.

### Bill No. 5.

[7] This bill was reserved to the overruling of an objection to the testimony of a deputy sheriff who was called by the state for the purpose of impeaching Felix Monroe, a defense witness. While Monroe was on the stand he was placed upon his guard, and the proper foundation was laid for the impeachment of his testimony relating to a shotgun that belonged to Clement Mackles. The deputy sheriff was sworn, and he was asked this question:

"I ask you, Mr. Savastano, when you were crossing the river with Felix Monroe, on your way to arrest Joe Monroe, Sr. and Jr., what Felix Monroe said to you about Clement Mackles' shotgun, and who had Clement Mackles' shotgun."

This question was objected to as irrelevant, leading, and hearsay. From the record we gather that the homicide was committed with Clement Mackles' shotgun, and, as the witness Felix Monroe had denied knowledge of the gun, it was proper for the state to impeach the testimony of the witness. The deputy sheriff answered the question as follows:

"He told me that his father, Joe Monroe, Sr., had borrowed Clement Mackles' shotgun and still had it."

The trial judge correctly overruled the objection to this testimony. State v. Hogan, 42 So. 352, 117 La. 869; Marr. Crim. Jurisprudence, vol. 2, p. 977.

We find no prejudicial error in the record, and the verdict and sentence are therefore affirmed.

O'NIELL, C. J., dissents from the ruling on Bills 3, 4, and 5.