EUCLID I. LACHAPELLE *vs.* UNITED SHOE MACHINERY
CORPORATION.

Suffolk.    February 6, 1945. — May 2, 1945.

Present: FIELD, C.J., QUA, DOLAN, & SPALDING, JJ.

*Monopoly. Constitutional Law,* Separation of powers of government.
*Equity Jurisdiction,* Monopoly.

The procedure set up by §§ 4–7 of G. L. (Ter. Ed.) c. 93, is not violative
of art. 30 of the Declaration of Rights; it authorizes the courts to
perform a function so closely connected with and so far incidental to
strictly judicial proceedings that in obeying the statute the courts
would not be exercising executive or nonjudicial powers.

COMPLAINT, filed in the Superior Court on June 15, 1944.
The case was reported to this court by *Beaudreau,* J.

*R. Wait,* (*C. Oberdorfer* with him,) for the respondent.

*A. J. B. Cartier,* for the petitioner.

QUA, J.    This is a complaint under G. L. (Ter. Ed.)
c. 93, § 4, alleging in substance that the respondent has
created and maintains a monopoly in the manufacture and
sale of machinery for making shoes, and praying for the
appointment of a master in accordance with the provisions
of that section.    The Superior Court issued an order to the
respondent to show cause, and the trial judge reports for
our determination the correctness of his refusal to vacate
or quash the order.    The only question presented and
argued is whether the procedure set up by §§ 4–7, inclusive,
is unconstitutional as an attempt to impose nonjudicial
duties upon the Superior Court in violation of art. 30 of
the Declaration of Rights.

General Laws (Ter. Ed.) c. 93, § 2, provides that every
contract, agreement, arrangement, combination, or prac-
tice in violation of the common law whereby a monopoly
of the kind described is or may be created, established, or
maintained is against public policy, illegal, and void.    Sec-
tion 3 authorizes the Attorney General or by his direction

a: district attorney to bring suit in the name of the Commonwealth to restrain the acts denounced by § 2. Then follow §§ 4 and 5, the sections here immediately in question. Section 4 provides that upon written complaint (apparently by any person) on oath filed in the Supreme Judicial or Superior Court, alleging that any person has entered into any contract, agreement, arrangement, combination, or practice declared illegal and void under § 2, the court shall hear the complainant and his witnesses, and if it appears to the court that such illegality exists, the court shall issue notice to the respondents to show cause why the court should not appoint a master to hear and report upon the complaint, and that if cause is not shown the court shall appoint a master, who shall, in accordance with the established practice and rules in equity, hear the parties upon the allegations of the complaint. After such hearing the master "shall make and file his report, and said parties may present their objections and exceptions thereto and prosecute the same in accordance with the rules of procedure in equity." By § 5 it is provided that the master may append to his report such recommendations to the parties, pertinent to and warranted by his findings or rulings, as "may tend to remove restraint or to prevent any ground of complaint" found to be proved. Such recommendations may be disaffirmed and expunged by the court. "The report, if affirmed by the court, shall be transmitted by the clerk to the attorney general, who shall forthwith cause such further proceedings, either civil or criminal, to be instituted as such report may warrant." The original proceeding ends with the transmission of the master's report to the Attorney General, and there are no other consequences unless the Attorney General institutes some "further" proceeding.

Article 30 of the Declaration of Rights is the familiar constitutional provision for the separation of powers. It reads, "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either

of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

The respondent insists that the procedure above described is not judicial in character in that it leads to no judgment of any kind, determines no rights, and imposes no liabilities; that its sole end is the bare finding of facts, a result which amounts to nothing except as it furnishes information to the Attorney General which he may discard if he sees fit; and that the courts are used only as investigating agents for an executive officer.

We concede the force of the argument and might be inclined to follow it if we felt that the statute imposed upon the court merely the duty of supplying information to an executive officer to aid in the performance of purely executive duties not associated with judicial action of any kind, as did the statute dealt with in the highly illuminating case of *Matter of Richardson*, 247 N. Y. 401, cited by the respondent. But we think that the statute in the present case goes beyond that. We think that it authorizes the courts to perform a function so closely connected with and so far incidental to strictly judicial proceedings that the courts in obeying the statute would not be exercising executive or nonjudicial powers. The statute was designed as a means of obtaining information for the purpose of instituting civil or criminal prosecutions in court, if the information secured should warrant that course. The master's report is transmitted to the Attorney General as the chief prosecuting officer of the Commonwealth solely for that purpose. He is not at liberty to disregard it. We need not decide whether a master's report might so plainly demonstrate the existence of an unlawful monopoly and the possibility of proving it that the Attorney General could be compelled to prosecute. Whatever may be left to his judgment in this respect, § 5 is mandatory at least to the extent that he is under a statutory obligation to proceed if in his judgment the report warrants such action.

The procedure under the statute is therefore both in the nature of a bill of discovery and in the nature of an inquest.

It resembles the statutory procedure in Probate Courts under G. L. (Ter. Ed.) c. 215, § 44, as last amended by St. 1943, c. 91, for the examination of persons suspected of having fraudulently concealed property of a deceased person — a proceeding which ends with the discovery of evidence without any decree for relief. *Martin* v. *Clapp*, 99 Mass. 470. *McNulty* v. *Howe*, 290 Mass. 597. It also resembles the inquiry made under G. L. (Ter. Ed.) c. 38, § 8, as amended, by a District Court or trial justice into the death of a person supposed to have died by violence and the inquiry under G. L. (Ter. Ed.) c. 55, § 39, into alleged violation of election laws. Each of these proceedings is designed merely to ascertain facts for the purpose of subsequent prosecution. There is some analogy also between proceedings under this statute and the ordinary inquisitorial proceedings of grand juries in the criminal courts, where even if a true bill is returned, further prosecution rests in the discretion of the district attorney or the Attorney General. It has never been doubted that the duties of obtaining discovery and of holding inquests may properly be performed by judges. It has been said, in substance, that holding an inquest is a quasi judicial function which may be committed to administrative officers or may with propriety be placed upon the judiciary. *Ocampo* v. *United States*, 234 U. S. 91, 100. See *Attorney General* v. *Brissenden*, 271 Mass. 172, 180. There are many functions of that character. *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386, 387–388. *Wyman* v. *Eastern Railroad*, 128 Mass. 346. *In re Petition of Mayor & Aldermen of Northampton*, 158 Mass. 299, 302–303. *Opinion of the Justices*, 234 Mass. 612, 616. *Opinion of the Justices*, 261 Mass. 556, 606.

We think that in discovering the facts the court performs a judicial duty even though there may be a break in the technical continuity of the proceedings, owing to the necessity of subsequent action by the Attorney General. It is true that in the instances of the statutory inquests hereinbefore mentioned the investigating judge may himself issue process against a person whose probable guilt is dis-

closed (G. L. [Ter. Ed.] c. 38, § 13; c. 55, § 44), but technically that is as much an independent proceeding as is the institution of a prosecution by the Attorney General in accordance with the statute now under consideration. Numerous cases in which the decisions of courts through commissioners appointed under statutes providing for the distribution of the costs of public improvements may later be changed by new legislation are further instances in which the finding of facts by judicial proceedings in the general nature of an inquest may not lead to finally decisive results, since the whole field remains within the scope of legislative action. *Salem Turnpike & Chelsea Bridge Corp.* v. *County of Essex,* 100 Mass. 282, 286–287. *Scituate* v. *Weymouth,* 108 Mass. 128. *Agawam* v. *County of Hampden,* 130 Mass. 528. *Kingman, petitioner,* 153 Mass. 566, 580. *Providence, Fall River & Newport Steamboat Co.* v. *Fall River,* 183 Mass. 535. See *Boston, petitioner,* 221 Mass. 468.

Although the doctrine of separation of powers is clearly and emphatically expressed in the Constitution and must be maintained to its full extent, the exact line between judicial and executive or legislative powers has never been delineated with absolute precision. *Denny* v. *Mattoon,* 2 Allen, 361, 377. Various powers which, regarded by themselves in the abstract, might be deemed legislative or executive have been considered proper to be exercised by courts because they were intimately connected with and necessary or auxiliary to the exercise of strictly judicial powers. See *Dow* v. *Wakefield,* 103 Mass. 267, 273. In this class might be mentioned the power to make rules, including for some purposes the power of this court to make rules governing other courts (G. L. [Ter. Ed.] c. 221, § 27; c. 223, § 16; c. 233, § 57; c. 235, § 22), the power of this court over the admission and disbarment of attorneys (*Opinion of the Justices,* 279 Mass. 607), and the power to appoint or to remove certain officers whose duties are closely connected with the judicial work of the court, although in general powers of appointment and removal are executive powers. G. L. (Ter. Ed.) c. 211, § 4; c. 221, §§ 1, 4; c. 276, § 83. *Catheron* v. *County of Suffolk,* 227

Mass. 598, 602. *Attorney General* v. *Tufts,* 239 Mass. 458, 481. *Attorney General* v. *Pelletier,* 240 Mass. 264, 296. *Opinion of the Justices,* 300 Mass. 596, 598–599. Compare *Case of Supervisors of Election,* 114 Mass. 247; *Boston* v. *Chelsea,* 212 Mass. 127.

The respondent relies upon *Dinan* v. *Swig,* 223 Mass. 516, where a statute providing for judicial investigation of elections was held invalid in so far as it applied to elections to the Legislature on the ground that under the Constitution the legislative bodies were themselves the sole judges of the due election of their members. As applied to such elections the findings of the court would be wholly futile, since the entire subject matter remained in other hands, and the findings would not lead in ordinary sequence to any further judicial proceedings. In other words, the judicial department was to be employed solely to aid the legislative department in the performance of a duty wholly withdrawn from judicial cognizance. We think that case distinguishable from the case before us on the grounds just stated. The statute there involved has been upheld in its application to other elective officers. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81.

Federal decisions seem to depend largely upon the limitation of the grant of Federal judicial power to proceedings coming within the definition of "cases" or "controversies" (Constitution of the United States, art. 3, § 2) and upon distinctions between courts established under the Constitution and other so called courts whose duties are of the nature of those performed by administrative officers or boards — a distinction not applicable in passing upon a statute that relates only to this court and to the Superior Court, both of which are clearly parts of the judicial department of the government under art. 30 of the Declaration of Rights. We have found no Federal cases where, as in the case at bar, inquisitorial duties were placed upon courts solely in aid of prospective judicial proceedings. See *Hayburn's Case,* 2 Dall. 409, 410; *United States* v. *Ferreira,* 13 How. 40; *Gordon* v. *United States,* 117 U. S. 697; *In re Sanborn, petitioner,* 148 U. S. 222; *Interstate Commerce*

*Commission* v. *Brimson,* 154 U. S. 447; *La Abra Silver Mining Co.* v. *United States,* 175 U. S. 423, 457, 461; *Muskrat* v. *United States,* 219 U. S. 346; *Fidelity National Bank & Trust Co.* v. *Swope,* 274 U. S. 123, 134; *Ex parte Bakelite Corp.* 279 U. S. 438; *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 279 U. S. 716, 725; *Harrison* v. *Moncravie,* 264 Fed. 776, 781–782; *Commissioner of Internal Revenue* v. *Liberty Bank & Trust Co.* 59 Fed. (2d) 320; *Z. & F. Assets Realization Corp.* v. *Hull,* 114 Fed. (2d) 464. But in *Matter of Davies,* 168 N. Y. 89, the court held valid a statute in many respects similar to the one now before us for reasons in part similar to those we have expressed. See *Board of Education of the San Francisco Unified School District* v. *Mulcahy,* 50 Cal. App. (2d) 418; *People* v. *Bard,* 209 N. Y. 304, 308–309; *Matter of Rosenthal* v. *McGoldrick,* 280 N. Y. 11; *Matter of Mitchel* v. *Cropsey,* 177 App. Div. (N. Y.) 663.

It has not been argued, and we think it could not be successfully argued, that the incidental provision under which the master may make recommendations, which however may be expunged by the court, affects the constitutionality of the statute. That provision is scarcely more than a recognition of the propriety of such suggestions designed to end further controversy as may in proper circumstances and with suitable precautions be made by any judge hear-, ing litigation. *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, 432–433.

*Order denying respondent's motion
to quash affirmed.*