[No. 24280-6-I.   Division One.   February 25, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK ANDREW OSLOOND, *Appellant*.

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Theresa L. Fricke, Senior Appellate Attorney,* for respondent.

SCHOLFIELD, J.—Mark A. Osloond appeals his conviction for burglary in the second degree. We affirm.

## FACTS

On June 16, 1988, Osloond was charged by information with the crime of burglary in the second degree, committed at 1413 14th Avenue, Seattle, the Hombres Saloon. A stipulation to appoint Janice Niemi as a judge pro tempore was signed by both the deputy prosecuting attorney and Osloond's counsel of record, and an order appointing Niemi was signed by the presiding judge and entered on May 3, 1989.

A trial on stipulated facts, based on the police reports, was conducted before Judge Niemi, and she found Osloond guilty beyond a reasonable doubt of burglary in the second degree. Osloond was sentenced to 3 months' confinement, with credit for time served. This appeal timely followed.

## STIPULATION TO JUDGE PRO TEMPORE

Osloond argues that because the record does not show that he consented to the appointment of the judge pro tempore, either orally or in writing, the court was without jurisdiction to hear his case.

Article 4, section 7 of the Washington Constitution states the following concerning the appointment of judges pro tempore:

> A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, *or their attorneys of record,* approved by the court and sworn to try the case.

(Italics ours.) RCW 2.08.180 repeats the language of Const. art. 4, § 7 verbatim.

▪ Osloond does not argue that his attorney signed the stipulation without his consent. Rather, Osloond's argument is merely that he did not personally sign the stipulation or state his consent on the record. Const. art. 4, § 7 and/or RCW 2.08.180 do not state that a defendant's additional personal consent is necessary.

In *State v. Sain,* 34 Wn. App. 553, 663 P.2d 493 (1983), defense counsel orally agreed to trial before a judge pro tempore, without obtaining his clients' consent. After withdrawal of the original counsel, new counsel signed a written stipulation agreeing to a judge pro tempore, apparently with the understanding that the issue of his clients' consent could be raised later. Despite the fact that one of the clients refused to consent or sign the stipulation, the judge pro tempore refused to recuse himself. *Sain,* at 557.

In holding that the absence of one defendant's ratification of his counsel's consent to the appointment of the judge pro tempore deprived the court of its jurisdiction to hear the case, the *Sain* court noted that it was clear that Sain had refused to give his written consent to having his case tried by a judge pro tempore and that such consent should have been obtained before the judge pro tempore took any action in the case. *Sain,* at 557.

*Sain* is not on point. Osloond does not allege that his attorney consented to the appointment of the judge pro tempore without authority to do so. He merely argues that neither his signature nor a record of his oral consent is

present in the record. This assertion is insufficient to challenge the validity of the stipulation to the appointment of the judge pro tempore.

## STATE SENATOR SERVING AS JUDGE PRO TEMPORE

Osloond argues that the appointment of Niemi as a judge pro tempore violated the separation of powers doctrine.

One of the fundamental principles of the American constitutional system is that the governmental powers are divided among three departments—the legislative, the executive, and the judicial—and that each is separate from the other. 16 Am. Jur. 2d *Constitutional Law* § 294 (1979). Although no specific provision is made for a separation of powers in either the United States Constitution or the Washington Constitution, the creation of three separate spheres of government operates as an apportionment of the powers. 16 Am. Jur. 2d *Constitutional Law* § 295 (1979).

Both parties to this appeal make reference to Washington constitutional provisions in their briefs. However, neither reference is on point. The State refers to Const. art. 2, § 14, which states in pertinent part:

> No person, being a member of congress, or holding any civil or military office under the United States or any other power, shall be eligible to be a member of the legislature; and if any person after his election as a member of the legislature, shall be elected to congress or be appointed to any other office, civil or military, under the government of the United States, or any other power, his acceptance thereof shall vacate his seat . . ..

The State's brief attempts to distinguish the circumstances here, because a judge pro tempore is not appointed to office, but merely assumes a temporary position. However, a careful reading of Const. art. 2, § 14 shows that it refers to appointments under the federal government or some other power, and not to Washington civil offices, and so is not pertinent here.

On the other hand, Osloond analogizes the circumstances here to Const. art. 4, § 15. That section states as follows:

> The judges of the supreme court and the judges of the superior court shall be ineligible to any other office or public employment than a judicial office, or employment, during the term for which they shall have been elected.

This article is also inapplicable, because Niemi was not a duly elected judge seeking additional employment, but rather, a legislator temporarily acting as a superior court judge.

This issue is one of first impression in Washington. However, the United States Supreme Court has dealt with an analogous issue in *Mistretta v. United States,* 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989). Mistretta challenged the creation of a Federal Sentencing Commission, arguing *inter alia* that the requirement that three positions on the Commission be filled by federal judges violated the separation of powers doctrine.

In its analysis, the Court reviewed the historical underpinnings of the separation of powers doctrine and quoted James Madison as follows:

> Separation of powers . . . "d[oes] not mean that these [three] departments ought to have no *partial agency* in, or no *controul* over the acts of each other," but rather "that where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free constitution, are subverted." . . ..

*Mistretta,* at 380–81 (quoting *The Federalist No. 47,* at 325–26 (J. Cooke ed. 1961)).

The *Mistretta* Court went on to note that the United States Constitution contains no express provision prohibiting Article 3 judges from taking on extrajudicial duties comparable to the prohibition contained in U.S. Const. art. 1, § 6, which reads in part as follows:

> "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

*Mistretta,* at 397–98.

The *Mistretta* Court stated that in addition to the lack of any prohibition in the constitution, the historical practice, albeit a controversial one, was for judges to, upon occasion, assume extrajudicial duties. *Mistretta,* at 400. The Court went on to cite several of its own precedents, including *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L. Ed. 40 (1851), and *Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L. Ed. 436 (1792). The issue in *Hayburn's* was the constitutionality of a statute empowering federal and state courts to set pensions for Revolutionary War veterans. The New York Circuit had been of the opinion in *Hayburn's* that the individual judges who would be setting pensions would not be acting in their judicial capacities, but as individual commissioners carrying out their pension–related duties. The case was rendered moot before a Supreme Court decision was made. *Mistretta,* at 402.

The issue in *Ferreira* concerned the constitutionality of a statute authorizing a federal District Court to adjudicate claims for losses for which the United States was responsible under the 1819 treaty by which Spain ceded Florida to the United States. The *Ferreira* Court concluded that although the powers granted under the statute were "'judicial in their nature,'" they were not "'judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States.'" *Mistretta,* at 403.

■■ In light of the foregoing history, the *Mistretta* Court concluded that:

> the principle of separation of powers does not absolutely prohibit Article III judges from serving on commissions such as that created by the Act. The judges serve on the Sentencing Commission not pursuant to their status and authority as Article III judges, but solely because of their appointment by the President as the Act directs. Such power as these judges wield as Commissioners is not judicial power; it is administrative power derived from the enabling legislation. . . . [T]he judges, uniquely qualified on the subject of sentencing, assume a wholly administrative role upon entering into the deliberations of the Commission. In other words, the Constitution, at least as a *per se* matter, does not forbid judges from wearing two hats; it merely forbids them from wearing both hats at the same time.

*Mistretta,* at 404. The *Mistretta* Court went on to note that not all extrajudicial service under every circumstance would necessarily be permissible. *Mistretta,* at 404.

In *Smith v. Mount,* 45 Wn. App. 623, 726 P.2d 474, *review denied,* 107 Wn.2d 1016 (1986), the Whatcom County Sheriff ordered that a metal pole building, which had been seized because it was part of a marijuana growing operation, be forfeited pursuant to the seizure and forfeiture provisions of the Uniform Controlled Substances Act. *Mount,* at 624–25. On appeal, Smith argued that the statutory scheme providing for forfeiture combines investigatory, prosecutory, and adjudicative functions within one agency, in violation of the separation of powers doctrine.

The *Mount* court noted that the separation of powers doctrine does not provide for exclusive spheres of operation in each branch of government. *Mount,* at 626. *See also Zylstra v. Piva,* 85 Wn.2d 743, 539 P.2d 823 (1975). The *Mount* court went on to state that when combinations of functions exist within one agency, it must be determined whether one function impairs the other. The court noted that

> the mere combination of functions, without more, does not constitute a due process violation by creating an unconstitutional risk of bias.

*Mount,* at 626.

Applying the law to the facts before us, we hold that, in this instance, Niemi's serving as a judge pro tempore did not violate the separation of powers doctrine. As noted above, the Washington Constitution contains no express provision prohibiting legislators from being appointed as judges pro tempore. Utilizing the holding in *Mistretta,* it can be said that when Niemi presided over Osloond's trial, she did so, not as a Washington state senator, but as one temporarily performing the functions of a judge appointed by the presiding judge and agreed to by the parties.

In addition, analogizing to the discussion in *Mount,* there is no showing that Niemi's dual role interfered in this instance with either her legislative role or her judicial role,

or that she wore "two hats" at the same time. Thus, there was no violation of the separation of powers doctrine.

Osloond does not contend that his conviction was invalid because Niemi violated the Code of Judicial Conduct. He argues that because she was a duly elected member of the State Senate, at the time she heard his case, she was empowered to both make the law and interpret it. It is obvious that at the time of Osloond's trial, Niemi was performing only the judicial function. In presiding over that trial, there was not the slightest conflict with her duties as a legislator. Osloond does not contend that there was.

It thus appears that the Supreme Court's reasoning in *Mistretta* is particularly appropriate.

> In other words, the Constitution, at least as a *per se* matter, does not forbid judges from wearing two hats; it merely forbids them from wearing both hats at the same time.

*Mistretta,* at 404.

We note that the circumstances of Niemi's dual employment have given rise to a hearing before the Commission on Judicial Conduct, resulting in a written decision which was filed on January 4, 1991. In that decision, the Commission concluded that Niemi's conduct violated CJC Canons 1, 2(A), 7(A)(1), 7(A)(3), and 7(A)(4). The Commission expressed a primary concern as follows:

> The dual service could cause substantial concerns in the minds of the public as to the integrity and independence of respondent while serving in a judicial position and could seriously affect public confidence in the integrity and impartiality of the judiciary.

Conclusion of law 4; *In re Niemi,* Comm'n on Judicial Conduct op. 90–953–F–20 (filed Jan. 4, 1991).

■■ The *Mistretta* Court rejected contentions based on alleged threats to "the integrity of the Judicial Branch" and "undermin[ing] public confidence in the disinterestedness of the Judicial Branch" in reaching its conclusion that having three judges on the federal sentencing commission did not violate the separation of powers doctrine. *Mistretta,* at 406, 407. Appearances and concerns for the integrity of the judicial branch are legitimate concerns for the Commission

on Judicial Conduct. However, they are concerns which do not impact the separation of powers. This case involves only the narrow question of whether an alleged violation of the separation of powers doctrine occurred. Our review of the Code of Judicial Conduct provisions relied upon by the Commission in its decision reveals no language suggesting that judicial decisions made by an individual who is later determined to have violated the Code are unenforceable. A violation of a canon of judicial conduct does not per se violate the separation of powers doctrine. Hence, we find no basis upon which to invalidate Osloond's conviction.

Judgment affirmed.

PEKELIS and FORREST, JJ., concur.

Review denied at 116 Wn.2d 1030 (1991).