[No. 61542-0. En Banc. October 13, 1994.]

DON CARRICK, ET AL, *Respondents*, v. GARY LOCKE, *as King County Executive*, ET AL, *Petitioners*, JEFFERY NICOLAI, ET AL, *Intervenors*.

*Norm Maleng, Prosecuting Attorney,* and *Quentin Yerxa, Kristofer Bundy,* and *Susan Slonecker, Deputies,* for petitioners.

*John W. Wolfe* and *Irwin H. Schwartz,* for respondents.

*Hoag, Vick, Tarantino & Garrettson,* by *James M. Cline,* for intervenors.

DURHAM, J. — The King County Executive, Gary Locke, other King County officials, and the King County District Court seek review of a ruling by the Superior Court granting a preliminary injunction to the Respondents Don Carrick and Scott Elston. The injunction precluded the Federal Way District Court from conducting an inquest into the death of Antonio Jackson. Intervening on behalf of the Respondents are Jeffery Nicolai and Michael Rayborn, the two King County police officers whose presence at the scene of the death precipitated the inquest.

The Superior Court found that both RCW 36.24 and the King County Executive Order implementing that statute violate the constitutional separation of powers doctrine. After consideration of the arguments of both sides, as well as the policies animating the separation of powers doctrine, we conclude that neither the inquest statute nor the King County procedures present a constitutional problem. Accordingly, we reverse the trial court and remand for initiation of the inquest into Jackson's death.

On December 14, 1993, Antonio Jackson was observed allegedly shoplifting a pack of cigarettes from a Safeway supermarket. One of the store's security guards stopped him after he exited the store and brought him back inside. Subsequently, Jackson fled the store and was chased by the security guard and the Respondents herein, Don Carrick and Scott Elston. They caught Jackson and held him on the ground until King County police officers arrived. The police officers proceeded to handcuff Jackson. When Jackson did not comply with police directives, the officers allege that they checked his vital signs and noted that he was breathing and had a pulse. They did not immediately administer lifesaving aid to Jackson, but summoned a medic unit when Jackson continued to be unresponsive. When the medics arrived, they could not find a pulse and they unsuccessfully sought to revive Jackson. He was later declared dead at the scene. An autopsy conducted by the King County Medical Examiner determined that Jackson had died from asphyxia due to compression of the neck and chest.

On December 31, 1993, Norm Maleng, the King County Prosecutor, requested that Gary Locke, the King County Executive, convene a coroner's inquest into Jackson's death. Locke agreed and on January 3, 1994, he contacted Judge Utigard, the Presiding Judge of the King County District Courts, to request that he assign a judge to conduct an inquest into Jackson's death.

The inquest was scheduled for March 7, 1994, in front of Federal Way District Court Judge Leverette. On February 2, 1994, Respondents Carrick and Elston moved to challenge

the inquest, alleging, *inter alia*, violations of the separation of powers doctrine, the appearance of fairness doctrine, and the state supremacy clause. The King County Prosecutor's office responded both that there were no constitutional violations, and that even if there were, the District Court could not rule on such violations as its only mandate was to preside over the fact-finding inquest. Judge Leverette held that the Respondents had not proved the procedure's unconstitutionality, and denied the request.

Respondents then filed a civil action in King County Superior Court, raising the above-mentioned constitutional issues, as well as others. On March 2, 1994, Judge Bates issued a temporary restraining order and ordered a show cause hearing for March 10, 1994. After hearing argument regarding the constitutionality of the inquest procedure, Judge Bates issued a preliminary injunction enjoining the inquest, finding that both RCW 36.24 and Executive Order PHL 7-1 (AEP) are unconstitutional under the separation of powers doctrine of both the state and federal constitutions. He did not rule on any of the other issues presented. King County sought direct review from this court, which was granted.

## NATURE OF INQUESTS

"A coroner's inquest is not a culpability-finding proceeding." *State v. Ogle*, 78 Wn.2d 86, 88, 469 P.2d 918 (1970). Rather, the purpose of a coroner's inquest is to determine who died, what was the cause of death, and what were the circumstances surrounding the death, including the identification of any actors who may be criminally liable for the death. RCW 36.24.040. RCW 36.24 outlines the duties of the county coroner in general, and describes inquests in particular. The coroner is empowered to summon and empanel jurors (RCW 36.24.020-.030); to subpoena witnesses (RCW 36.24.050); and to issue arrest warrants (RCW 36.24.100-.120). Additionally, the statute provides that a district court judge may act as coroner if the coroner is not available. RCW 36.24.160-.170. RCW 36.24.020 deals with inquests in particular, and provides, in part, that:

The coroner in the county where an inquest is to be convened pursuant to this chapter shall notify the superior court to provide persons to serve as a jury of inquest to hear all the evidence concerning the death and to inquire into and render a true verdict on the cause of death. Jurors shall be selected and summoned in the same manner and shall have the same qualifications as specified in chapter 2.36 RCW. The prosecuting attorney having jurisdiction shall be notified in advance of any such inquest to be held, and at his discretion may be present at and assist the coroner in the conduct of the same. . . .

In King County, the coroner's duties under RCW 36.24 were originally vested by the home rule charter in the Department of Public Health. King County Charter 920.20.30. A later ordinance created a division of the medical examiner within the Department of Public Health, which was given most of the duties of the coroner, "except for the holding of inquests, which function is vested in the county executive". King County Code 2.24.110(A). King County Executive Order PHL 7-1 (AEP), effective as of July 28, 1990,

establish[es] policies and procedures for the conducting of inquests into the causes and circumstances of any death involving a member of any law enforcement agency within King County . . . and into other exceptional cases . . ..

The Executive Order mandates that inquests be held for any death involving a King County law enforcement agent. The Executive Order dictates that the County Executive request that the presiding judge of the District Court Judges Association "furnish a judge to conduct the inquest on the Executive's behalf according to the Court Rules in Appendix 9.1." Executive Order § 6.6. Those court rules may be waived in "exceptional circumstances" or where waiver serves the "public interest". Executive Order § 6.8.

### SEPARATION OF POWERS

■ One of the fundamental principles of the American constitutional system is that the governmental powers are divided among three departments — the legislative, the executive, and the judicial — and that each is separate from the other.

*State v. Osloond*, 60 Wn. App. 584, 587, 805 P.2d 263, *review denied*, 116 Wn.2d 1030 (1991). Washington's constitution,

much like the federal constitution, does not contain a formal separation of powers clause.[1] *See Osloond,* at 587. Nonetheless, the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine. *See In re Juvenile Director,* 87 Wn.2d 232, 238-40, 552 P.2d 163 (1976); *Osloond,* at 587. The validity of this doctrine does not depend on the branches of government being hermetically sealed off from one another. The different branches must remain partially intertwined if for no other reason than to maintain an effective system of checks and balances, as well as an effective government. *In re Juvenile Director,* at 239-40. The doctrine serves mainly to ensure that the fundamental functions of each branch remain inviolate.

 The separation of powers doctrine is grounded in flexibility and practicality, and rarely will offer a definitive boundary beyond which one branch may not tread. *In re Juvenile Director,* at 240.

> The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.

*Zylstra v. Piva,* 85 Wn.2d 743, 750, 539 P.2d 823 (1975). In examining the ability of federal judges to operate legislatively,[2] the United States Supreme Court has put a slightly different twist on this inquiry: "[T]he Constitution, at least

---

[1]The trial court here held the statute and Executive Order unconstitutional under the separation of powers doctrine of both the state and federal constitutions. However, the separation of powers doctrine embedded in the federal constitution applies only to the federal government, and does not control the functioning of our state government. We continue to rely on federal principles regarding the separation of powers doctrine in order to interpret our state constitution's stand on this issue. *See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 504, 585 P.2d 71 (1978).

[2]In *Mistretta v. United States,* 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989), the Supreme Court upheld the constitutionality of the United States Sentencing Commission. The Commission formulates federal sentencing guidelines, and the validity of these guidelines was challenged on separation of powers grounds due to the involvement of federal judges on the Commission. In part, the Court depended on the long history of federal judges serving in extrajudicial offices to find their membership on the Commission to be constitutional.

as a *per se* matter, does not forbid judges to wear two hats; it merely forbids them to wear both hats at the same time." *Mistretta v. United States*, 488 U.S. 361, 404, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989). *See also Osloond*, at 589. *Mistretta* succinctly describes our paramount concerns regarding separation of powers challenges to judicial action:

> In cases specifically involving the Judicial Branch, we have expressed our vigilance against two dangers: first, that the Judicial Branch neither be assigned nor allowed "tasks that are more properly accomplished by [other] branches," and, second, that no provision of law "impermissibly threatens the institutional integrity of the Judicial Branch."

(Citations omitted.) *Mistretta*, 488 U.S. at 383.

■■ Unlike many other constitutional violations, which directly damage rights retained by the people, the damage caused by a separation of powers violation accrues directly to the branch invaded. The maintenance of a separation of powers protects institutional, rather than individual, interests. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851, 92 L. Ed. 2d 675, 106 S. Ct. 3245 (1986). In adjudging the potential damage to one branch of government by the alleged incursion of another, it is helpful to examine both the history of the practice challenged as well as that branch's tolerance of analogous practices. *E.g., Mistretta*, 488 U.S. at 398-401 (allowing judicial participation on Sentencing Guidelines Commission based on historical analogues of extrajudicial activity). "Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610, 96 L. Ed. 1153, 72 S. Ct. 863, 26 A.L.R.2d 1378 (1952) (Frankfurter, J., concurring). Thus, a long history of cooperation between the branches in any given instance tends to militate against finding any separation of powers violation.

■■ The crux of the Respondents' separation of powers argument is founded on a categorical view of governmental functions. They maintain that the investigation of alleged or

potential crimes is solely an executive function. Hence, Respondents believe that, since an inquest can be such an investigation, judicial participation is constitutionally inappropriate. However, the separation of powers doctrine does not act so rigidly, nor are all governmental functions amenable to specific categorization. *Zylstra*, 85 Wn.2d at 750. *See also Morrison v. Olson*, 487 U.S. 654, 689-91, 101 L. Ed. 2d 569, 108 S. Ct. 2597 (1988) (explicitly abandoning attempts to categorize functions in separation of powers analysis). Although the primary responsibility for the investigation of potential crimes lies with the executive, it cannot be doubted that the judiciary plays a role even before the formal filing of charges. For instance, judges issue search warrants which allow police to further their investigations. Judges also preside over grand juries, which act in a manner closely analogous to inquest proceedings.[3] *See* RCW 2.36. These instances of judicial involvement in investigations into potentially criminal activity are not unique.[4] Indeed, we have noted that cooperation and coordination among the branches is to be encouraged, and only when such cooperation changes to unwarranted coercion or intrusion should the judiciary exercise its authority to sustain its separate identity. *Zylstra*, 85 Wn.2d at 750. Respondents, in urging us to abandon our tradition of bilateral investigations, envision a government founded on a distrustful truce rather than a synergistic union.

 Considering first the statute authorizing inquests, we perceive no separation of powers violation. RCW 36.24 dates back virtually unchanged to the 1854 territorial laws of

---

[3]A grand jury has been described as "an institution [that] has one foot in the judicial branch and the other in the executive." *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1444 (11th Cir. 1987). The unique function of the grand jury necessitates a high degree of cooperation between the judicial and executive branches. *Grand Jury Materials*, at 1444. The constitutionality of this arrangement under both the federal constitution and Washington's constitution is unquestionable. U.S. Const. amend. 5; Const. art. 1, § 26.

[4]In perhaps the most famous judicially led investigation in the United States, Chief Justice Earl Warren of the United States Supreme Court headed the inquest into the assassination of President John F. Kennedy. *See Mistretta*, 488 U.S. at 401 n.26. *See generally* Cyril Wecht, *Cause of Death* 15-76 (1993).

Washington.[5] Thus, it predates the enactment of our state's constitution by some 35 years and has played an active role in our legal system for over a century. Judges have been assuming the role and duties of coroners for as long as Washington has been part of the United States. Such a long and heretofore unchallenged association between the executive and judicial branches is prima facie evidence of the constitutionality of the statute.

Nor do we find that this statute encompasses either of the dangers we traditionally guard against in separation of powers challenges to judicial action. First, the statute does not assign to district court judges tasks that are more properly accomplished by the executive branch. Although the general nature of inquests is investigatory, coroners have been described as acting in a judicial capacity in presiding over such proceedings. 1 Walter H. Anderson, *Sheriffs, Coroners, and Constables* § 8, at 6 (1941). But as accurately described by the Supreme Judicial Court of Massachusetts:

> An inquest is not a prosecution of anybody. It is not a trial of anyone. The pertinent statutory provisions exemplify a public policy that the inquest serves as an aid in the achievement of justice by obtaining information as to whether a crime has been committed.

*Kennedy v. Justice of Dist. Court*, 356 Mass. 367, 373, 252 N.E.2d 201 (1969). Such an investigation involves cooperation between the executive and judicial branches, and thus may be properly undertaken by either branch.[6] *See Zylstra*, 85 Wn.2d at 750.

---

[5]The only sections of that chapter that are of wholly recent vintage are RCW 36.24.155 and RCW 36.24.175, both of which deal with the coroner's interactions with funeral homes. The other changes made to this statute throughout its history have been relatively minor. For instance, the statute was amended in 1987 in order to substitute "district judge" for the former "justice of the peace" in accord with RCW 3.30.015. Laws of 1987, ch. 202, § 204.

[6]Respondents rely almost exclusively on *In re Richardson*, 247 N.Y. 401, 160 N.E. 655 (1928) to support the proposition that a judge cannot preside over an investigation. However, even that court recognized that "there are peripheral zones where the judicial and the administrative merge into each other". *In re Richardson*, 247 N.Y. at 413. Most courts considering separation of powers challenges to judicial investigations have upheld the practice. *E.g., State v.*

Nor do we find that the participation of district court judges in conducting inquests under RCW 2.36 impermissibly threatens the institutional integrity of either the judicial or executive branches. The longstanding nature of this practice alone is enough to demonstrate that this amicable history of cooperation has not mortally wounded either branch. While RCW 36.24.160 permits district court judges to assume the duties of the coroner's office, it does not mandate such an accession. Nonetheless, such voluntary cooperation is not harmful in this case. Like the grand jury function, the holding of inquests falls in a gray zone at the periphery of both the executive and judicial branches. Although inquests combine functions that can be described as both judicial and executive,[7] in the context of an inquest they are not so central to the mission of either branch as to impermissibly interfere with the integrity of either one. The cooperation envisioned by RCW 36.24 does not violate the separation of powers doctrine.

■ Turning next to the King County Executive Order implementing the inquest procedure, we find that this also passes constitutional muster. King County Code 2.24.110(A) vests the authority to conduct inquests with the County Executive. Executive Order PHL 7-1 (AEP) § 6.6 states, in part, that "the County Executive shall request the Presiding Judge of the District Court Judges Association, in consultation with other judges, to furnish a judge to conduct the inquest". Although the Executive Order mandates that the County Executive ask for a district court judge to conduct

---

*Mackles*, 161 La. 187, 108 So. 410 (1926); *LaChapelle v. United Shoe Mach. Corp.*, 318 Mass. 166, 61 N.E.2d 8 (1945); *State v. Washington*, 83 Wis. 2d 808, 266 N.W.2d 597 (1978).

[7] For instance, the officer conducting the inquest presides over and instructs the jury, makes decisions as to the relevant inquiries, and certifies the opinion of the jury. These are all functions that are traditionally thought of as judicial. However, an inquest is an investigation and may constitute the genesis of a criminal prosecution. These are functions which are traditionally considered to be executive in nature. Nonetheless, such descriptions are more heuristic than precise. A categorical and abstract approach to separation of powers analysis is at odds with the functional reality of a dynamic government.

the inquest, it does not mandate that the District Court Judges Association *must* provide such a judge. Hence, for purposes of the separation of powers doctrine, the Executive Order poses no more threat to the independence and integrity of the judiciary than does RCW 36.24, which also permits district court judges to conduct inquests. Given the longstanding tradition of cooperation between the executive and judicial branches in conducting inquests, we perceive no additional problems with King County's formal codification of this cooperation.

## DELEGATION CONCERNS

Respondents express concerns that the County Executive has exceeded the scope of his authority under both RCW 36.24 and the King County Charter in delegating inquest duties to district court judges. This argument was not raised to the trial court, nor was it raised in the Respondents' Brief in opposition to review. Rather, it is raised now for the first time on appeal in Respondents' Brief. Normally, this court will not review a claim of error which is raised for the first time in a substantive brief. RAP 2.4, 2.5. However, as the claim is wholly a legal question and would undoubtedly resurface upon remand, we will exercise our discretionary authority to review the claim. RAP 12.2. Respondents' delegation arguments are primarily premised on the unconstitionality of the Executive Order under the separation of powers doctrine. Having disposed of that issue, Respondents' delegation arguments are substantially weakened.

The Respondents first argue that the coroner, pursuant to RCW 36.24, has no authority whatsoever to delegate his or her duties, and so the County Executive is similarly prohibited. As primary authority for this proposition, Respondents rely on article 11, section 4 of our constitution. In relevant part, this section states:

> Any home rule charter . . . may provide for such county officers as may be deemed necessary to carry out and perform all county functions as provided by charter or general law . . . but shall not affect . . . the jurisdiction of the courts.
>
> . . . .

After the adoption of such charter, such county shall continue to have all the rights, powers, privileges and benefits then possessed or thereafter conferred by general law. All the powers, authority and duties granted to and imposed on county officers by general law, except the prosecuting attorney . . . and the justices of the peace, shall be vested in the legislative authority of the county unless expressly vested in specific officers by the charter. The legislative authority may by resolution delegate any of its executive or administrative powers, authority or duties not expressly vested in specific officers by the charter, to any county officer or officers or county employee or employees.

■ Clearly, the Executive Order here has no effect on the jurisdiction of the district courts. RCW 36.24.160 specifically contemplates that district court judges may conduct coroner's inquests, and there is no constitutional infirmity with such an arrangement. The remainder of this constitutional provision simply provides that all responsibilities placed on county officials by general statutes will accrue to the county legislative authority in a home rule county. Those responsibilities may be delegated, either by the county charter or by ordinance, to "any county officer or officers or county employee or employees". This is *exactly* what King County has done. It has broken up the responsibilities of the coroner, as described in the general law of RCW 36.24, assigning most of the coroner's duties to the division of the medical examiner, but retaining the authority to conduct inquests in the County Executive. Such a division of labor is precisely what is contemplated and permitted by Const. art. 11, § 4. There is no constitutional prohibition on such an innovative distribution. Nor does this article limit any further delegation by the executive. If such limits exist, they would necessarily have to be part of the legislative authority's delegation itself.

■ The second part of Respondents' delegation argument concerns section 850 of the King County Charter, which provides, in part:

Any power or duty of a county officer except the veto power of the county executive *may* be delegated by that officer to another officer or employee under his control and supervision; provided, however, that the delegating officer shall continue to

be responsible for the exercise of the power or the performance of the duty delegated.

(Italics ours.) Generally, when both "may" and "shall" are contained in the same provision, it is presumed that "may" indicates a permissive duty, while "shall" indicates a mandatory duty. *Clark v. Pacificorp*, 118 Wn.2d 167, 176-77, 822 P.2d 162 (1991). Hence, the only mandatory duty placed on the County Executive by this provision is that he or she retain ultimate responsibility for the exercise of power or the performance of the delegated duty. As stated in the Executive Order:

> The King County Executive is responsible for determining whether an inquest shall be held, for delegating the authority to conduct an inquest to a Court of Limited Jurisdiction within King County, and for scheduling the inquest in a timely manner.

Executive Order § 8.1. The Executive Order also mandates that a report from the inquest be forwarded to the County Executive. Executive Order § 8.3. Even were the inquest to be conducted by an executive officer, rather than a district court judge, the King County Executive could retain little more responsibility, as RCW 36.24 places certain independent and mandatory duties on whoever is conducting the inquest. *E.g.*, RCW 36.24.080 (witness testimony must be reduced to writing if murder or manslaughter suspected); RCW 36.24.100 (arrest warrant must be issued for any person found to have been involved in the homicide). Nonetheless, it is clear that the County Executive has retained the ultimate responsibility for inquests.

While the King County Charter expressly permits delegation to a county employee under the control and supervision of the County Executive, it does not mandate that this is the only form of delegation possible. Indeed, another section of the charter cautions that "[t]he specific statement of particular executive powers shall not be construed as limiting the executive powers of the county executive." King County Charter 320.20. Moreover, at least in the case of an inquest into a death in which county police are involved, appearance

of fairness concerns[8] should dictate that the inquest be held by an official exercising a high degree of independence from the County Executive, who is ultimately responsible for police conduct. The reason for holding an inquest is to obtain an objective, nonpartisan and independent opinion as to the cause of death and the circumstances surrounding that death. RCW 36.24.020, .040. It is for this reason that the county coroner is an elected official. RCW 36.16.030. An inquest conducted by an officer under the direct control of the County Executive could not provide the necessary assurances of impartiality the public expects from an inquest. Not only is the County Executive not bound in his delegation powers, fairness concerns dictate that he assign the inquest task to someone outside of his immediate authority, such as a district court judge.

### SUPREMACY CLAUSE

Respondents also argue that the Executive Order impermissibly conflicts with RCW 36.24, and so is invalid under Washington State's supremacy clause. That clause states: "Any county . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. 11, § 11.

> An ordinance must yield to a statute on the same subject on either of two grounds: if the statute preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the two that cannot be harmonized.

*Tacoma v. Luvene*, 118 Wn.2d 826, 833, 827 P.2d 1374 (1992). There is no preemption argument raised, so the only question is one of conflict. Such a conflict must be direct and irreconcilable. *Luvene*, at 835. The test is whether the local ordinance permits that which the statute forbids, and vice versa. *Luvene*, at 835.

---

[8]Respondents raise an appearance of fairness challenge to the participation of the prosecutor in this inquest; however, they misapprehend the nature of this doctrine. "[T]he appearance of fairness doctrine is directed at the evil of a biased or potentially interested judge or quasi-judicial decisionmaker." *State v. Post*, 118 Wn.2d 596, 618-19, 826 P.2d 172, 837 P.2d 599 (1992). The prosecutor is not the decisionmaker at the inquest, so there can be no appearance of fairness challenge to his or her involvement.

The conflicts alleged by Respondents involve gaps in the statute which are specifically dealt with by the Executive Order, and so do not create any direct conflict. In some cases, activities that the statute permits are made mandatory by the Executive Order.[9] *Compare* RCW 36.24.020 (prosecutor may be present at inquest and assist coroner) *with* Executive Order PHL 7-1 (AEP) app. 9.1, at 2 (prosecutor shall participate in inquest). In other cases, the district court judge is given responsibilities beyond those outlined in RCW 36.24, but these extra duties do not contravene or render nugatory the duties outlined in that chapter. *Compare* RCW 36.24.070-.110 (if jury finds murder or manslaughter committed, coroner must issue arrest warrant for persons not in custody, or deliver the jury's verdict, along with the witnesses' statements, to the charging magistrate in the case of a person already in custody) *with* Executive Order PHL 7-1 (AEP) app. 9.1, at 17 (district court judge to deliver jury's findings to King County Executive). Clearly, when the statute and the executive order contain different, but not conflicting, requirements, the person conducting the inquest must comply with both requirements. Of course, the most irreconcilable conflict would be between the statute's use of the term "coroner" and King County's decision to substitute a district court judge in place of such coroner. However, as discussed above, there are no problems with such a substitution. We do not find any direct and irreconcilable conflict between the statute and the Executive Order.

---

[9]We note one potential point of conflict arises because of the prosecutor's faulty understanding of his role in the inquest proceedings. On February 10, 1994, the prosecutor sent a letter to Judge Leverette which appears to be an attempt to delineate the scope of the inquest. However, the prosecutor has no authority to promulgate such limitations. Once an inquest is called, "[t]he coroner must summon and examine . . . every person, who, in his or her opinion or *that of any of the jury*, has any knowledge of the facts." (Italics ours.) RCW 36.24.050. The prosecutor's role is to aid the judge and jury in developing a full factual record; however, it is for the judge and jury alone to decide what matters must be properly inquired into in order to fulfill their statutory duty. Rather than simply being an arm of the prosecutor, a coroner's inquest, much like the medical examiner's office itself, must operate as a separate entity which renders an independent, objective opinion. *See* Cyril Wecht, *Cause of Death* 251 (1993).

METHOD OF EMPANELING JURY

 Respondents also ask that we clarify the scope of the pool from which jurors will be chosen. A "jury of inquest" is defined as "a body of persons six or fewer in number, but not fewer than four persons, summoned before the coroner or other ministerial officer, to inquire of particular facts." RCW 2.36.010(7). RCW 36.24.020 requires that the coroner notify the superior court to provide a jury, and that the inquest jurors be selected as specified in RCW 2.36. Generally, superior courts draw jurors from countywide source lists. RCW 2.36.055. However, district court juries "may be selected at random from the population of the area served by the court." RCW 2.36.050. Hence, district courts may rely on jurors from a much narrower geographic range. There is no specific mention in the statute of the particular lists or limitations to be used for choosing a jury of inquest. However, the statute does state that superior courts, rather than district courts, are to provide the inquest jury. RCW 36.24.020. Moreover, the King County Executive, who retains ultimate authority for conducting inquests, is a countywide elected official. Thus, RCW 2.36 more properly requires that an inquest jury be chosen from the broader, countywide superior court source list rather than the geographically limited list used by district courts.

In sum, we hold that RCW 36.24 and Executive Order PHL 7-1 (AEP) are constitutional under the separation of powers doctrine. Similarly, we find that the Executive Order did not exceed the King County Executive's authority under the King County Charter. Although there are differences between the Executive Order and RCW 36.24, we hold that there are no conflicts of a constitutional magnitude between the statute and the order. Finally, we interpret RCW 2.36 to require that inquest juries be chosen from countywide source lists. We dissolve the injunction entered by the trial court. King County may proceed with this inquest.

ANDERSEN, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

UTTER, J. (concurring) — I agree with the majority's reasoning in this case and write only to emphasize the district court has the discretion to decline the County Executive's request to hold an inquest if the court perceives a conflict of interest or a separation of powers problem in accepting the request. The Executive Order cited by the majority attests to this fact.[10] I cite it to avert any misapprehension the district court is obliged to accede to the County Executive's request to hold such a proceeding.

BRACHTENBACH, J., concurs with UTTER, J.

---

[10]Section 7.0 PROCEDURES:

Responsibilities: Action :

. . . .

County Executive 7.3 Upon receiving Prosecuting Attorney's recommendation, determines whether an inquest is to be held.

7.4 If inquest is to be held, requests that the King County District Court conduct the inquest on the Executive's behalf according to the Court Rules in Appendix 9.1.

7.4.1 Requests the Presiding Judge of the District Court Judges Association, in conjunction with other judges, to furnish a judge to conduct the inquest.

7.5 *If the District Court accepts the responsibility for conducting the inquest,* schedules date for inquest to begin.

(Italics mine.) King County Executive Order PHL 7-1 (AEP).