# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70294-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE SOCORO BAUTISTA, | ) | |
| a/k/a SOCORRO BAUTISTA-SALTO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 17, 2015 |
| | ) | |

LAU, J. — Jose Bautista pleaded guilty to one count of rape of a child in the first degree. He challenges the conviction, contending (1) the court lacked jurisdiction to accept his plea because the record fails to show that his consent form stipulating to the judge pro tempore was translated into Spanish and (2) his guilty plea was involuntary and unknowing because the record fails to affirmatively demonstrate that his Spanish language interpreter fully translated his statement of defendant on plea of guilty form. Because both Bautista and his attorney signed the form consenting to the appointment of the judge pro tempore and the record affirmatively shows that Bautista understood

the rights he was waiving by entering his guilty plea, we affirm the judgment and sentence.

## FACTS

Jose Socorro Bautista was charged by information with two counts of rape of a child in the first degree and two counts of child molestation in the first degree. Bautista, who speaks only Spanish, agreed to enter an Alford plea to one count of rape of a child in the first degree in exchange for dismissal of the remaining charges and the prosecutor's recommendation of a 103-month sentence.[1] The guilty plea hearing occurred before a judge pro tempore. On the same day he entered his plea, Bautista, his attorney, and the prosecutor all signed a written stipulation authorizing a judge pro tempore to preside over the plea hearing. A state-certified Spanish language interpreter was present and translated English into Spanish and Spanish into English throughout the hearing. The judge pro tempore stipulation form contained no certification by the interpreter indicating she had translated the form for Bautista, nor did the parties discuss the stipulation on the record.

The stipulation is a preprinted form entitled "Stipulation, Oath, and Order Appointing Judge Pro Tempore." (Capitalization omitted.) It states in part:

> IT IS HEREBY AGREED THAT KENNETH COMSTOCK, member of the bar of the State of Washington, shall try and determine the above entitled cause and that his/her action in the trial and subsequent proceedings have the same effect as if he/she were a judge of said court.

---

[1] In the guilty plea form, Bautista states that he does not believe he is guilty of the charged crime but is pleading guilty to take advantage of the State's offer. Bautista entered his guilty plea pursuant to N. Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

70294-7-I/3

Beneath the stipulation are signature lines for plaintiff, defendant, and defendant's attorney. In this case, it is undisputed that Bautista, his attorney, and the prosecutor each signed the form the same day Bautista entered his <u>Alford</u> plea. Both the judge pro tempore and the presiding judge for King County also signed the stipulation on the same day as the plea.

Before the plea hearing, Bautista signed a statement of defendant on plea of guilty form (plea form) explaining all of the rights he was waiving as a result of his decision to plead guilty. At the hearing, the court asked Bautista if his attorney and the interpreter had gone through the plea form with him,[2] and Bautista responded that they had. The plea form also included the interpreter's written and signed certification that she had translated the attorney's explanation of the plea form for Bautista. Bautista said that his attorney and the interpreter had answered "most" of his questions about the plea, but he immediately clarified that he had no questions about the plea at that time. The court then reviewed the plea form with Bautista, quoted below, and asked him if he understood the various rights, including constitutional rights he was waiving and other aspects of the plea procedure. When Bautista occasionally expressed confusion, the court provided additional explanation until Bautista indicated that he understood. After reviewing the plea form with Bautista, Bautista told the judge pro tempore that he had no other questions. The court accepted Bautista's plea of guilty, finding that Bautista

---

THE COURT: All right. First thing, did [your attorneys], along with an interpreter go through this document together?
[BAUTISTA]: Yes.
Report of Proceedings (Mar. 4, 2013) (RP) at 2.

-3-

was entering his plea of guilty knowingly, intelligently, and voluntarily. Bautista was sentenced to 103 months to life. Bautista appeals.

## ANALYSIS

### Standard of Review

The requirement that the parties consent to a judge pro tempore is jurisdictional. State v. Belgarde, 119 Wn.2d 711, 718, 837 P.2d 599 (1992). Jurisdictional issues are reviewed de novo. State v. Squally, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997).

Appellate review of the validity of a guilty plea is de novo. Young v. Konz, 91 Wn.2d 532, 536, 588 P.2d 1360 (1979).

### Judge Pro Tempore Stipulation

First, Bautista argues that his consent to the judge pro tempore was invalid because nothing in the record indicates that the stipulation form was either translated into Spanish or explained to him in Spanish. Therefore, his consent to the judge pro tempore was not informed and the judge lacked jurisdiction to accept his guilty plea. We conclude that the signature of Bautista's attorney standing alone constitutes valid consent under the Washington Constitution, statute, and case authority.

A case in superior court may be tried by a judge pro tempore. CONST. art. IV, § 7; RCW 2.08.180. The authority of a judge pro tempore includes the authority to accept guilty pleas and conduct other nontrial hearings. State v. Duran-Madrigal, 163 Wn. App. 608, 611, 261 P.3d 194 (2011). However, the appointment of a judge pro tempore must be "agreed upon in writing by the parties litigant, or their attorneys of record . . . ." CONST. art. IV, § 7; RCW 2.08.180. The requirement that the parties consent to a judge pro tempore is jurisdictional. Belgarde, 119 Wn.2d at 718. A judge

-4-

pro tempore lacks jurisdiction to preside over a case absent the consent of the parties. Belgarde, 119 Wn.2d at 718.

The express language of the constitution and RCW 2.08.180 unambiguously provides that consent to the appointment of a judge pro tempore is valid if given by either the parties or their attorneys: "A case in superior court may be tried by a judge pro tempore either with the agreement of the parties if the judge pro tempore is a member of the bar, is agreed upon in writing by the parties litigant or their attorneys of record . . . ." CONST. art. IV, § 7 (emphasis added). "A case in superior court of any county may be tried by a judge pro tempore, who must be either: (1) A member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record . . . ." RCW 2.08.180 (emphasis added). We have interpreted this unambiguous language to mean that an attorney need not obtain his or her client's express authorization before consenting to the appointment of a judge pro tempore. State v. Robinson, 64 Wn. App. 201, 204, 825 P.2d 738 (1992) ("The constitution does not require an attorney to obtain his client's consent before signing such a stipulation."); State v. Osloond, 60 Wn. App. 584, 586–87, 805 P.2d 263 (1992).

For the first time at oral argument before this court, Bautista argued that a 2001 constitutional amendment altered the consent requirement to appoint a judge pro tempore.[3] Specifically, Bautista argues that by adding the phrase "with the agreement

---

[3] Bautista failed to address this argument in his briefs and raised it for the first time at oral argument contrary to RAP 12.1(a) and case authority. He did not inform the court that the issue was not presented in his briefs, nor did he give the court the opportunity to determine if the issue should be considered to decide the case. RAP 12.1(b). Bautista claims that his bare recitation of the 2001 amendment's language in a

of the parties" the amended provision requires that a client grant his express consent to a judge pro tempore.[4] Therefore, Bautista contends, the amendment casts doubt on the validity of <u>Robinson</u> and <u>Osloond</u>, two cases decided before the 2001 amendment.

The amended constitutional provision does not require a client's express consent. Read in context, the plain language of the provision allows either the client or his attorney to consent to a judge pro tempore. Article IV, section 7 provides in relevant part:

> A case in the superior court may be tried by a judge pro tempore either with the agreement of the parties if the judge pro tempore is a member of the bar, is agreed upon in writing by the parties litigant or their attorneys of record, and is approved by the court and sworn to try the case; or without the agreement of the parties if the judge pro tempore is a sitting elected judge and is acting as a judge pro tempore pursuant to supreme court rule.

CONST. art. IV, § 7. When interpreting constitutional provisions, we look first to the plain language of the text and will accord it its reasonable interpretation. <u>Wash. Water Jet Workers Ass'n v. Yarbrough</u>, 151 Wn.2d 470, 477, 90 P.3d 42 (2004). The plain language of the provision allows for an attorney to provide consent for a judge pro tempore. Bautista contends that the added phrase "with the agreement of the parties" requires that the client grant consent. However, read in context, that phrase simply clarifies when consent is required as opposed to when it is not: "A case . . . may be

---

footnote preserves the issue. We disagree. Nonetheless, we grant the State's motion to supplement and consider the parties' supplemental briefs.

[4] The Engrossed Senate Joint Resolution enacting the amendment provides:
"A case in the superior court may be tried by a judge pro tempore <u>either with the agreement of the parties if the judge pro tempore is</u> a member of the bar, <u>is</u> agreed upon in writing by the parties litigant or their attorneys of record, <u>and is</u> approved by the court and sworn to try the case . . . ." Engrossed S.J. Res. 8208, 57th Leg., Reg. Sess. (Wash. 2001) (added language is underlined).

-6-

tried by a judge pro tempore either with the agreement of the parties if the judge pro tempore is a member of the bar . . . or without the agreement of the parties if the judge pro tempore is a sitting elected judge." CONST. art. IV, § 7. When the judge pro tempore is simply a member of the bar—and not an elected sitting judge—consent is required. When consent is required, it must be provided "in writing by the parties litigant or their attorneys of record . . . ." CONST. art. IV, § 7.

This interpretation of the constitutional provision is consistent with the corresponding statute. RCW 2.08.180 provides: "A case in the superior court of any county may be tried by a judge pro tempore, who must be either: (1) A member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court, and sworn to try the case; or (2) pursuant to supreme court rule, any sitting elected judge." RCW 2.08.180. Like the constitutional provision, under the statute the parties must agree to the appointment of a judge pro tempore only when the judge is a member of the bar, and either the parties or their attorneys may provide valid consent. Bautista misreads the constitutional provision as requiring the client's consent regardless. But this interpretation conflicts with the unambiguous language in the corresponding statute. Bautista's interpretation of the constitution is unreasonable and arguably renders the statute unconstitutional. However, Bautista fails to address this inconsistency. Bautista's interpretation would also render part of the constitutional provision superfluous. If the amended provision required the client's consent, then the portion allowing a party's attorney of record to consent would be meaningless. See Amalgamated Transit Union Local 587 v. State, 142 Wn.2d 183, 260, 11 P.3d 762

(2000) ("the court should not embrace a construction causing redundancy or rendering words superfluous."). And our Supreme Court has reiterated the well-settled rule that

> [a] case in superior court may be tried by a judge pro tempore only if, among other conditions, the parties or their attorneys of record have consented in writing or in open court to trial before the judge pro tempore. CONST. art. IV, § 7; RCW 2.08.180; Nat'l Bank of Wash. v. McCrillis, 15 Wn.2d 345, 356, 130 P.2d 901 (1942); State v. Belgarde, 119 Wn.2d 711, 719, 837 P.2d 599 (1992).

In re Dependency of K.N.J., 171 Wn.2d 568, 578, 257 P.3d 522 (2011). We conclude the 2001 amendment had no effect on the consent provision. Robinson and Osloond remain valid law.[5]

In Robinson, a stipulation appointing a judge pro tempore was signed by both the prosecutor and defense counsel, but the defendant was not present. Robinson, 64 Wn. App. at 201–02. On appeal, Robinson argued that the judge pro tempore lacked jurisdiction to preside over his case because he did not authorize his counsel to stipulate to the judge pro tempore. Robinson, 64 Wn. App. at 203. The court affirmed, finding that defense counsel did not need to obtain Robinson's consent:

> Robinson's argument and the decisions he cites overlook the plain language of Const. article 4, sec. 7, which expressly allows either the parties or their attorneys to stipulate to use of a judge pro tempore and to thereby waive the right to an elected judge. The constitution does not require an attorney to obtain his client's consent before signing such a stipulation. . . .
>  . . . .
>  . . . [A]n attorney's "general authority to try the case" authorizes him or her to stipulate to a judge pro tempore on behalf of the client, even if the client is not aware that the judge is a judge pro tempore.

Robinson, 64 Wn. App. at 203–05 (footnotes omitted) (quoting Burton v. Ascol, 105 Wn.2d 344, 352, 715 P.2d 110 (1986)).

---

[5] Since this constitutional provision was amended almost 14 years ago, no Washington court has ever adopted the interpretation suggested by Bautista.

Similarly, in Osloond, the defendant argued that the judge pro tempore lacked jurisdiction because, though his attorney had stipulated to the judge's appointment, the defendant "did not personally sign the stipulation or state his consent on the record." Osloond, 60 Wn. App. at 586. We held the attorney's stipulation sufficient for consent even though the defendant's consent appeared nowhere in the record. Osloond, 60 Wn. App. at 586–87.

The plain language in the constitution, the statute, and relevant case authority control here. Written consent of Bautista's attorney was sufficient to confer jurisdiction in this case. Here, Bautista signed the stipulation agreeing to the judge pro tempore's appointment and an interpreter was present during the entire proceedings.

Substantive Right to Elected Judge

Bautista also argues that defendants have a substantive[6] right to have their cases presided over by an elected judge and that an attorney cannot waive this right unless the client grants specific authority to do so. Bautista relies primarily on State v. Sain, 34 Wn. App. 553, 663 P.2d 493 (1983), and Mitchell v. Kitsap County, 59 Wn. App. 177, 797 P.2d 516 (1990). In Sain, defense counsel signed a stipulation consenting to the appointment of a judge pro tempore with the understanding that the court would address each of the three defendants' consent the following day. Sain, 34 Wn. App. at 555. The next day, two of the defendants consented and one did not. Sain, 34 Wn. App. at 555. The judge pro tempore refused to recuse himself. Sain, 34 Wn. App. at 555. Division Three of this court held that the judge pro tempore lacked

_____

[6] It is unclear whether Bautista intends to argue that the right is "substantive" or "substantial." He uses both terms interchangeably. Br. of Appellant at 6–9.

jurisdiction as to the third defendant because defense counsel could not waive the defendant's right to have his case presided over by an elected judge without authorization:

> While an attorney is impliedly authorized to waive procedural matters, a client's substantial rights may not be waived without that client's consent. We find the right under Const. art. 4, § 5, to be tried in a court presided over by an elected superior court judge accountable to the electorate, is a substantial right. Thus, the requirement of Mr. Sain's written consent could not be waived by [defense counsel's] unauthorized statements.

Sain, 34 Wn. App. at 556–57 (citations omitted); see also Mitchell, 59 Wn. App. at 184:

> Moreover, "[a]n attorney is without authority to surrender a substantial right of a client unless the client grants specific authority to do so." Certainly, consent to the appointment of a judge pro tempore is a substantial right. In our judgment, the Mitchells' attorney was without authority to waive that right.

(quoting In re Marriage of Maxfield, 47 Wn. App. 699, 707, 737 P.2d 671 (1987)).

We previously rejected this same argument because it ignores the plain language of article IV, section 7. Robinson, 64 Wn. App. at 203–04. Like Bautista, Robinson cited both Sain and Mitchell for the proposition that the constitutional right to have one's case tried before an elected judge was a substantial right that an attorney could not waive absent the client's consent. Robinson, 64 Wn. App. at 203–04. We rejected Robinson's argument, stating that the "constitution does not require an attorney to obtain his client's consent before signing such a stipulation. Therefore, whether the right to an elected judge is a 'substantial right' is irrelevant." Robinson, 64 Wn. App. at 204.

Our Supreme Court has also noted that the right to have one's case presided over by an elected judge is neither a "substantive" nor a "substantial" right. Belgarde, 119 Wn.2d at 721 ("Const. art. 4, § 5 does not expressly grant a right to a trial presided

over by an elected superior court judge . . . . Contrary to [Appellant's] suggestion, this court . . . did not decide that the right to be tried by an elected superior court judge is a substantive right."); see also State v. Belgarde, 62 Wn. App. 684, 692 n.3, 815 P.2d 812 (1991) (noting that the Sain court equates "substantial" with "substantive," and stating that "it is debatable whether a litigant's right to an elected judge is substantive rather than procedural.").

Further, both Sain and Mitchell are distinguishable from this case. In Sain, the attorney's signature on the stipulation was expressly conditional on obtaining his clients' consent the next day, which one client refused to grant. Sain, 34 Wn. App. at 555. As our Supreme Court characterized the case, "In Sain, the Court of Appeals addressed the narrow question whether an attorney could consent to his client's being tried by a judge pro tempore in the face of the client's express refusal in open court to the appointment of a judge pro tempore . . . ." Belgarde, 119 Wn.2d at 721. As Belgarde indicates, Sain stands for the proposition that when a client expressly refuses to consent to the appointment of a judge pro tempore, his attorney lacks authorization to consent. Sain does not require an attorney to obtain express authorization from his client before stipulating to the appointment of a judge pro tempore. Robinson, 64 Wn. App. at 204.

Mitchell is also inapposite. "In Mitchell, neither the Mitchells nor their attorney consented to the judge pro tempore. Consequently, the court's discussion as to whether an attorney can consent without the express authorization of his or her client is dictum." Robinson, 64 Wn. App. at 203 n.1.

-11-

Finally, Bautista argues that the appointment of the judge pro tempore was invalid because there is no evidence in the record that he was provided an interpreter in compliance with RCW 2.43.030 when he signed the form consenting to the judge's appointment. Nothing in RCW 2.43.030's text requires an interpreter be appointed. Instead, it requires that "[w]henever an interpreter is appointed . . . the appointing authority shall . . . appoint a certified or qualified interpreter to assist the person throughout the proceedings." RCW 2.43.030. Here, Bautista was assisted by an interpreter throughout the guilty plea proceedings. Bautista also contends that the judge pro tempore lacked jurisdiction because the record fails to establish that he received any assistance from an interpreter when he signed the consent form for the judge's appointment. However, he cites no authority to support this contention. As discussed above, neither the constitution, statute, nor case law requires the defendant's express consent for the appointment of judges pro tempore. CONST. art. IV, § 7; Robinson, 64 Wn. App. at 204.

### Knowing and Voluntary Guilty Plea

Next, Bautista claims that his guilty plea was involuntary and unknowing because the record fails to affirmatively establish that his interpreter fully translated the plea form. We conclude that the record demonstrates that Bautista knowingly, voluntarily, and with a full understanding of his constitutional rights, entered into a guilty plea. Even though Bautista did not receive a written translation of the guilty plea form, no authority requires such a translation.

CrR 4.2(d) states that a trial court "shall not accept a plea of guilty without first determining that it is made voluntarily, competently and with an understanding of the

nature of the charge and the consequences of the plea." CrR 4.2(d). A defendant attempting to withdraw his guilty plea for the first time on appeal must demonstrate a manifest constitutional error. RAP 2.5; State v. Walsh, 143 Wn.2d 1, 6–7, 17 P.3d 591 (2001). The alleged error is undisputedly one of constitutional magnitude: "[G]iven the fundamental constitutional rights of an accused which are implicated when a defendant pleads guilty, a claim that a guilty plea pursuant to a plea agreement was involuntary . . . is the kind of constitutional error that RAP 2.5(a)(3) encompasses." Walsh, 143 Wn.2d at 8. However, the alleged error must also be manifest. Walsh, 143 Wn.2d at 8.

> [A]n alleged error is manifest only if it results in a concrete detriment to the claimant's constitutional rights, and the claimed error rests upon a plausible argument that is supported by the record. To determine whether a newly claimed constitutional error is supported by a plausible argument, the court must preview the merits of the claimed constitutional error to see if the argument has a likelihood of succeeding.

State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999).

Once the trial court has accepted a guilty plea, it may allow withdrawal of that plea only when it is "necessary to correct a manifest injustice." CrR 4.2(f). The defendant bears the burden of proving a manifest injustice. State v. Ross, 129 Wn.2d 279, 283–84, 916 P.2d 405 (1996).[7] A manifest injustice is one that is "obvious, directly observable, overt, not obscure." State v. Taylor, 83 Wn.2d 594, 596, 521 P.2d 699

---

[7] Bautista repeatedly asserts that the State bears the burden of proving the validity of a guilty plea, citing Ross, 129 Wn.2d at 284. However, the defendant bears the initial burden of proving a manifest injustice, for instance, that a plea was entered involuntarily or unknowingly. Ross, 129 Wn.2d at 283–84. If the defendant meets this burden, then the State must make "an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily." Ross, 129 Wn.2d at 284. In any event, even if it is the State's burden to demonstrate the validity of Bautista's guilty plea, the State has met this burden, as explained below.

(1974). Demonstrating that a plea was involuntary or unknowing is sufficient to prove a manifest injustice. State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991).

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A trial court must adequately inform a defendant of all direct consequences of his guilty plea but not all possible collateral consequences. Saas, 118 Wn.2d at 44. "The consequences of a guilty plea include the waiver of certain constitutional rights which include the waiver of the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers." State v. Lewis, 16 Wn. App. 132, 135, 553 P.2d 127 (1976). However, due process does not require a trial court to inform a defendant "'of each and every right which is waived by a guilty plea . . . .'" Lewis, 16 Wn. App. at 136 (finding that a trial court's failure to inform a defendant that his guilty plea waived the privilege against self-incrimination does not preclude a determination that the plea was entered voluntarily and intelligently) (quoting United States v. Frontero, 452 F.2d 406, 415 (5th Cir. 1971)). At a minimum, "the record must show that in pleading guilty, the defendant understood he was giving up three important constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." State v. Elmore, 139 Wn.2d 250, 269, 985 P.2d 289 (1999).

The record here shows that Bautista understood the constitutional rights waived by his guilty plea. The plea form explains all of the rights Bautista waived by pleading guilty. Bautista signed the statement and wrote his initials throughout the document. At the end of the statement is a signed certification by the interpreter indicating that she

70294-7-I/15

translated "the attorney's explanation of" the statement.[8] As the colloquy between the

court and Bautista indicates, the court also addressed all of Bautista's questions

regarding the plea during his colloquy, providing thorough explanations of the rights

Bautista was waiving by entering a guilty plea:

> THE COURT: We're on the record.
> [THE STATE]: We are your honor. Thank you. This is the State of Washington versus Jose Bautista, Cause No. 12-1-04662-6 SEA. [MP] on behalf of the State. The defendant is present in custody, joined by Counsel, [MM], also joined by a Spanish speaking Interpreter. If she could please introduce herself on the record.
> THE INTERPRETER: For the record, your honor, Amy Andrews, Washington State Court Certified Spanish Interpreter under AOC.
> THE COURT: Thank you. [The State]?
> [THE STATE]: Thank you. Mr. Bautista, I'm showing you –
> THE COURT: Well, I can do the inquiry, but is this going to be as charged?
> [THE STATE]: I'm sorry. He's pleading to count one of the current amended information.
> THE COURT: So it was previously amended?
> [THE STATE]: Yes, that is correct, previously amended. He's pleading to one count of rape of a child in the first degree, domestic violence.
> THE COURT: Okay. So, Mr. Bautista, I've been handed a form here called Statement of Defendant on Plea of Guilty. I'm going to ask you questions about this document. If you have any questions as we're going along, you stop me right away. Understand?
> THE DEFENDANT (through the Interpreter): Yes.
> THE COURT: All right. The first thing, did you and [defense attorney], along with an Interpreter, go through this document together?
> THE DEFENDANT (through the Interpreter): Yes.
> THE COURT: Did your attorneys answer any questions that you had about this document?
> THE DEFENDANT (through the Interpreter): Most of them.
> THE COURT: Do you have questions right now?
> THE DEFENDANT (through the Interpreter): No.
> THE COURT: All right. If you have any questions as we're going along, you stop me and we will try to answer them. Okay? Yes or no?
> THE DEFENDANT (through the Interpreter): Yes.

---

[8] The printed text of the certification provides the following: "I have translated this entire document for the defendant . . . ." However, the interpreter crossed out the word "entire" and wrote the phrase "the attorney's explanation of" in its place.

THE COURT: Is your true and correct name Socorro Jose Bautista.

THE DEFENDANT (through the Interpreter): It's Socorro Bautista, yes.

THE COURT: And is your birth date June 25, 1970?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: You have six years of formal education; is that correct?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: You are represented by [defense counsel], and [he] is here helping you right now; is that correct?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: You[] are charged in count one with rape of a child first degree, domestic violence. Do you understand the elements of that charge? Do you understand what the State is saying that you did?

THE DEFENDANT (through the Interpreter): I understand.

THE COURT: And do you understand that in pleading guilty here today, you're giving up your right to make the State prove that charge or all those elements beyond a reasonable doubt at trial?

THE DEFENDANT (through the Interpreter): I understand.

THE COURT: Paragraph 5, which begins at the top of page 2, contains a list of Constitutional rights that you have and that includes your right to have a trial, if you wanted one. In pleading guilty today, you're giving up all of those rights as to this charge. Do you understand those rights?

THE DEFENDANT (through the Interpreter): Yes, I have no other option.

THE COURT: Well, you do actually have other options. You could go to trial, if you chose to. Do you understand that?

THE DEFENDANT (through the Interpreter): I understand.

THE COURT: Do you understand that if you plead guilty here today, you will give up your right to have a trial?

THE DEFENDANT (through the Interpreter): Yes, I understand.

THE COURT: And do you understand that you are giving up the other Constitutional rights as listed in Paragraph 5 of this document?

THE DEFENDANT (through the Interpreter): What?

THE COURT: Do you understand that you have a right to a speedy and public trial; that you have the right to remain silent before and during the trial, no one could ever make you testify against yourself; you would have the right to hear and question any witnesses that would come in on behalf of the State to testify against you; you could bring in people to testify for you, if there was anyone, and that could be done at no charge to you; you'd be presumed innocent until the charge is proven beyond a reasonable doubt at trial or until you enter a plea of guilty—which is why we're here today, to see if you wish to do that—if you chose to go to trial and you were found guilty, you'd have the right to appeal that finding to a higher Court. Do you understand all those rights?

THE DEFENDANT (through the Interpreter): Not a hundred percent, but I do understand them.

THE COURT: All right. Well, what part don't you understand?

THE DEFENDANT (through the Interpreter): Well, some of—

THE COURT: Do you understand what a trial is? Do you understand that a trial, that's when the State brings people in who say, Mr. Bautista did this and this and this and this, and they testify against you. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes, I understand.

THE COURT: And do you understand that you could bring in people to testify, Mr. Bautista did not do this and this and this and that could be done at no charge to you, if there was anyone to testify on your behalf? Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And do you understand that you could testify or tell your side of the story, if you chose to, but no one could make you do that? Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: Do you understand the right to a speedy trial? Within a certain period of time, the State needs to bring you to trial or else the matter would have to be dismissed. Do you understand that?

THE DEFENDANT (through the Interpreter): No.

THE COURT: From the time that you are arraigned, if you do not give up additional time, the State has 60 days to bring you to trial. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: So do you understand that after all of the negotiations and so on, at least my understanding is, you're choosing to give those rights up and to enter a plea of guilty to one count or one charge here today. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And is that what you wish to do?

THE DEFENDANT (through the Interpreter): I'll do it.

THE COURT: All right. Do you understand that the maximum penalty for this particular charge is life imprisonment and a—is it a $100,000 fine or $50,000.

[DEFENSE COUNSEL]: Maybe it's 50,000.

[THE STATE]: I think it's 50,000.

[DEFENSE COUNSEL]: That was my mistake, your Honor.

THE COURT: I'll correct that. So that maximum penalty is life imprisonment and a $50,000 fine. Now, the standard range based on your criminal history and the seriousness of this charge is from 93 to 123 months in custody. Do you understand those penalties?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: Do you understand that this particular charge is considered the most serious offense under both the Two Strikes laws of the State of Washington, as well as the Three Strikes laws of the State of Washington? Did you and your lawyers talk about this?

THE DEFENDANT (through the Interpreter): Excuse me. I didn't understand.

THE COURT: Do you understand that under the laws of the State of Washington that this counts as an offense which can be counted under the Two Strikes law, which means if you have two of these particular types of convictions in your lifetime you would be sentenced to prison and you would not be able to get out under any circumstances? Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And do you understand this counts as one strike?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And also under the Three Strikes laws of the State of Washington this counts as a strike. Do you understand that?

THE DEFENDANT (through the Interpreter): No, I didn't understand.

THE COURT: Okay. Well, this counts as a strike offense. So if you would pick up two more convictions for non-sexual strike offenses—for example, a robbery or an assault in the second degree—if you would be convicted of two more of those types of charges, you would be sent to prison without chance of release under that law as well. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: On page 6 of this form, it indicates that the State will be recommending that you serve 103 months in custody on this matter, that you be placed on community custody, that you register as a sex offender, that you pay restitution in an amount to be determined, have no contact with the victim or any other minors, that you have a sexual deviancy evaluation and appropriate follow-up treatment—I'm sorry. Then it says, this is an open rec. Does that mean the defense can make their own?

[DEFENSE COUNSEL]: We can make our own recommendation.

THE COURT: Okay. But the State's recommendation, in addition to what you had I have talked about already, is they will move to dismiss counts two, three and four as part of the agreement. Do you understand what their position is?

THE DEFENDANT (through the Interpreter): No.

THE COURT: They want you to spend 103 months in custody, that once you get out you'd be placed on community custody where someone connected to the court system will be keeping an eye on you to make sure that you register with the sheriff as a sex offender; that you pay restitution or pay for any damages that you may have caused with other people and that would include counseling that they might need and that sort of thing; they're going to ask the Judge to order you not to have any contact with the victim in this case, nor with any other minor; they're going to ask that you be ordered to have a sexual deviancy evaluation and if counseling or treatment is recommended, that you follow through with that. Do you understand what they're going to ask the Judge to do?

THE DEFENDANT (through the Interpreter): No.

THE COURT: Well, what part don't you get?

-18-

THE DEFENDANT (through the Interpreter): What is he asking the Judge?

THE COURT: Well, the Judge will make the final decision as to your sentence. The State will make a recommendation. You and [your attorney] will then make a recommendation. The Judge will listen to everyone and then the Judge ultimately decides what your sentence will be. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And do you understand what the State is going to ask the Judge to do?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And do you understand then that you and [your attorney] can ask the Judge to do something else, if you want, so long as it does not involve a [special sex offender alternative]. And, again, after listening to everybody then the Judge makes the final decision. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: So I'm going to continue with this document here, and I'm going to turn to page 13. Paragraph 11 says, "The Judge has asked me to state briefly in my own words what I did that makes me guilty of this crime," and this is your statement. "This crime occurred in King County, Washington, between November 28th of 2009 to July 16th of 2012. I do not believe I am guilty of this crime; however, after reviewing the evidence with my attorneys, I believe there is a substantial likelihood that I would be found guilty or convicted if I went to trial, therefore, I am pleading guilty to take advantage of the State's offer. The Court may review the probable cause to find facts sufficient to accept this plea." Is that your statement?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: And is that what you wish to do today?

THE DEFENDANT (through the Interpreter): I have to.

THE COURT: You don't have to; but if you wish to accept the offer of the State, do you wish to enter into this Alford plea?

THE DEFENDANT (through the Interpreter): I didn't understand.

THE COURT: In order to accept what the State has offered as far as their sentencing recommendation and dismissal of three of the charges, are you willing to enter a plea of guilty today?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: All right. I'm just going to take just a moment then to review the [certification for determination of probable cause].

All right. I have reviewed the Certification and I do find that they are sufficient facts to support a finding here.

Before I enter a finding then, Mr. Bautista, do you have any questions about the document that you and I just reviewed together?

THE DEFENDANT (through the Interpreter): No.

THE COURT: All right. Then at this time, I am going to find that I believe you've entered—actually it looks like you've signed this document in pencil. I'm

going to pass it down to you and I'll have you sign it in ink, if you would, here in open court if you continue to wish to enter into this plea.

[THE STATE]: If I may, your Honor, did the Court inquire—

THE COURT: Oh, I will.

Do you understand, Mr. Bautista, that if I accept your plea here today as you are not a citizen of the United States, it could affect your ability to remain in the United States, to become a citizen of the United States or to seek naturalization. Do you understand that?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: Okay. Is that what you were looking for?

[THE STATE]: Yes.

THE COURT: So you have signed the documents. At this time, I am going to find that I believe you've entered into the plea freely and voluntarily with full knowledge of the consequences. I do not believe that anyone has threatened you or promised you anything to get you to plead guilty. And based on the facts contained within the Certification for Determination of Probably Cause, I am going to find that there are sufficient facts to support a guilty finding to the charge in count one of rape of a child in the first degree, domestic violence, and I'm going to find you guilty of that charge at this time.

Is there a sentencing date?

[DEFENSE ATTORNEY]: We do have a sentencing date, your Honor, and it's April 5th at 1:45 with Judge Linde, Courtroom West 921.

And, Mr. Bautista, this is the only notice of this you're going to get so if you get out of jail, you need to show up on that date.

THE COURT: Mr. Bautista, if you have any questions prior to that next hearing date, you contact [your attorneys]. Okay?

THE DEFENDANT (through the Interpreter): Yes.

THE COURT: That will conclude the hearing today. Thank you, and good luck.

Thank you, Madam Interpreter. Nice to see you.

THE INTERPRETER: Thank you, your Honor.

RP at 1–14.

The court reviewed and answered Bautista's questions about each constitutional trial right enumerated in paragraph 5 (a)–(f) of the plea form that Bautista would give up upon entering a plea of guilty: right to a speedy and public trial, right to remain silent, right to testify and confront witnesses, right to present witnesses without expense, right

to be presumed innocent, and the right to appeal a guilty finding.[9] The court also reviewed and answered questions about the maximum penalty, the consequence of pleading guilty as to the two and three strikes law, the State's sentencing recommendation, who ultimately decides the sentence imposed, who gets to make sentencing recommendations, Bautista's own Alford plea statement, immigration consequences resulting from the plea, and finally, whether Bautista understood all the rights he is giving up by pleading guilty. After this extensive colloquy, in which the court answered all of Bautista's questions, the court directed Bautista to re-sign the plea form. Immediately above Bautista's signature is the statement: "My lawyer has explained to me, and we have fully discussed, all of the above paragraphs. I understand them all. I have been given a copy of this 'Statement of Defendant on Plea of Guilty.' I have no further questions to ask the judge." (Emphasis added.) Bautista does not dispute that the interpreter certified under penalty of perjury that she translated from English into Spanish the attorney's explanation of the plea form.

Regardless, Bautista contends that a translated version of the guilty plea form was required. To support this assertion, Bautista relies on United States v. Mosquera, 816 F. Supp. 168 (E.D.N.Y. 1993). Mosquera involved a complex criminal case with 18 defendants, none of whom spoke English. Mosquera, 816 F. Supp. at 170. At a conference with all defendants and their attorneys—but only one interpreter—the court issued an order requiring the government to supply each defendant with translated

---

[9] Before the list of trial rights in paragraph 5 of the plea form, it states in all bold capital letters: "**I HAVE BEEN INFORMED AND FULLY UNDERSTAND THAT I HAVE THE FOLLOWING IMPORTANT RIGHTS, AND I GIVE ALL THEM UP BY PLEADING GUILTY.**"

-21-

versions of important documents, including the indictment and all other documents except motions and original evidence. Mosquera, 816 F. Supp. at 170. The government moved for reconsideration of the order, arguing, "[T]he court exceeded its authority because the order is not supported by any constitutional statute or rule nor is it a valid exercise of the court's supervisory power and . . . compliance with the order would be 'so burdensome as to be plainly unreasonable.'" Mosquera, 816 F. Supp. at 170–71. The court upheld the order, finding that translations of important documents were required due to the circumstances of the case:

> Just as summaries of testimony were inadequate in United States ex rel. Negron v. State of New York, 434 F.2d 386, 390 (2d Cir. 1970), so too is an interpreter's oral description of the contents of a critical document insufficient. Oral interpretations and written translations serve different purposes. While an oral interpretation can provide momentary understanding of representations contained in a document, a criminal defendant may need and want to review the document alone and with others to achieve a full understanding.

Mosquera, 816 F. Supp. at 175.

Mosquera is inapplicable here. The Mosquera court was not addressing the validity of a guilty plea or whether due process required a written translation of a non-English speaking defendant's guilty plea. The court addressed only whether it had the authority to require translated documents. Accordingly, the court did not hold that the constitution requires a full translation of important documents in every case involving a non-English speaking defendant. Rather, it emphasized that constitutional concerns implicated in the case supported the court's authority to require translated documents. Mosquera, 816 F.Supp. at 172–76. The court also acknowledged that ordering the government to provide translated documents exceeded what the Constitution requires:

> A court's supervisory power 'extends to establishing and maintaining those <u>higher standards</u> necessary and helpful in promoting fair adjudications and securing the integrity of the federal court system.' <u>United States v. Jamil</u>, 546 F. Supp. 646, 659 (E.D.N.Y. 1982), <u>rev'd on other grounds</u>, 707 F.2d 638 (2d Cir. 1983). The court need not limit itself to 'merely enforcing the minimal standards of conduct and procedure derived from the Constitution.' <u>Id.</u>

<u>Mosquera</u>, 816 F. Supp. at 175 (emphasis added).

Further, several federal appellate courts have declined to interpret <u>Mosquera</u> as support for the proposition that "due process mandates that non-English speaking defendants be supplied with written translations of critical court documents . . . ." Appellant's Reply Br. at 15 n.2. <u>See, e.g.</u>, <u>United States v. Gonzales</u>, 339 F.3d 725, 729 (8th Cir. 2003) ("<u>Mosquera</u> does not stand for the proposition that criminal defendants enjoy a constitutional right to written translations of court documents. Rather, a court may decide to provide written translations in difficult and complicated cases."); <u>see also</u> <u>United States v. Celis</u>, 608 F.3d 818, 841 (D.C. Cir. 2010) ("[A] number of other courts have recognized that '<u>Mosquera</u> does not stand for the proposition that criminal defendants enjoy a constitutional right to written translations of [all] court documents.' . . . We agree." (Quoting <u>Gonzales</u>, 339 F.3d at 729). <u>Canizales-Satizabal v. United States</u>, 73 F.3d 364 n.2 (7th Cir. 1995) ("Relying heavily on [<u>Mosquera</u>], Satizabal emphasizes that the indictment and other trial documents were not translated into a language he could understand. This court, however, has never held that a defendant has a constitutional right to have documents translated into his own language.")).

No Washington court has held that either the federal or state constitution requires a written translation of a defendant's guilty plea form. Bautista's argument that he

involuntarily and unknowingly entered his guilty plea because he did not receive a translation fails because he cites no authority requiring one. See State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court . . . may assume that counsel, after diligent search, has found none.'" (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962))). An appellate court need not consider issues unsupported by citation to authority. State v. Lord, 117 Wn.2d 829, 853, 822 P.2d 177 (1991).

Because Bautista cannot show that he involuntarily or unknowingly entered his guilty plea, he has failed to demonstrate that withdrawing his plea is necessary to correct a manifest injustice.[10] CrR 4.2(f); Saas, 118 Wn.2d at 42.

## CONCLUSION

Because defense counsel's signed consent to a judge pro tempore is valid under article IV, section 7 of the Washington Constitution, RCW 2.08.180, and controlling case authority and Bautista entered a knowing, voluntary, and intelligent plea of guilty, we affirm the judgment and sentence.

WE CONCUR:

___

[10] For the first time in his reply brief, Bautista seems to suggest that Alford pleas are subject to a higher standard of validity compared to traditional guilty pleas. Appellant's Reply Br. at 9–10. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, even if the panel were to assume, without deciding, that a higher standard applies, the record sufficiently demonstrates that Bautista understood the consequences of his plea and that he entered the plea voluntarily.

-24-